IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BRIAN E. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 09-667-MO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | OPINION AND ORDER |
| Defendant. | ) | |

MOSMAN, J.,

  Plaintiff Brian Watson challenges the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

  Mr. Watson alleged disability beginning January 1, 2000, due to fetal alcohol syndrome, arthritis, total arthroplasty of the left shoulder, depression, past history of drug abuse, and gout. Admin. R. 174. Mr. Watson had insured status for the purposes of Title II through September 30,

1 - OPINION AND ORDER

2004. *Id.* at 89. He must establish that he was disabled on or before that date to prevail on his claim. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The administrative law judge ("ALJ") applied the appropriate regulatory determination process for disability claims under the Social Security Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Based on a stipulation of the parties, this court remanded that decision. Admin. R. 573-74. On June 3, 2008, the ALJ issued his decision after remand. *Id.* at 555-65. On April 24, 2009, the Appeals Council assumed jurisdiction and issued a decision adopting the ALJ's findings of fact and conclusions of law, and giving further consideration to the evidentiary record to fully comply with instructions in the remand order. *Id.* at 533-47. The decision of the Appeals Council is the final decision of the Commissioner under review in this case.

The Appeals Council determined that Mr. Watson's ability to work during the relevant period was limited by degenerative joint disease of the left shoulder, status post arthroplasty, obesity, and asthma. *Id.* at 535. It found Mr. Watson retained the residual functional capacity to perform work at the light level of exertion, with the additional limitations that he could not reach above the shoulder with the left arm, could only occasionally lift up to 15 pounds with the left arm, and required a work environment where he would not be exposed to concentrated fumes, odors, gases or dusts, or poor ventilation. *Id.* at 542, 546. These limitations left Mr. Watson unable to do the work he had done in the past. The Appeals Council relied on testimony elicited by the ALJ from a vocational expert and found that a significant number of jobs exist in the national economy that Mr. Watson could perform. *Id.* at 544, 546. The Appeals Council concluded Mr. Watson was not disabled within the meaning of the Social Security Act during the relevant period. *Id.* at 546.

The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

Mr. Watson contends the Appeals Council improperly assessed his residual functional capacity because it failed to credit the opinion of his treating physician, Thomas Croy, M.D. Dr. Croy opined that Mr. Watson would be absent from work about two times per month if he were employed on a full-time basis. Admin. R. 443. The vocational expert testified that this limitation would make an entry level employee uncompetitive. *Id.* at 668. Mr. Watson argues that Dr. Croy's opinion should be credited as a matter of law and that doing so compels a finding that he is disabled.

Dr. Croy initially examined Mr. Watson in July 2000 for pain and limited range of motion in the left shoulder. Mr. Watson reported he was right-hand dominant and that the pain occurred with activity at his job as a bartender. Radiographic images showed a prominent screw from a previous surgery and degeneration of the humeral head. *Id.* at 260. Dr. Croy diagnosed moderate to severe degenerative arthritis and proposed hemi-arthroplasty. *Id.* at 258, 260.

Dr. Croy performed the surgery in September 2000. *Id.* at 244-45. In November 2000, Mr. Watson said he was doing well and he engaged in moderate activities including fishing and trying to swing a golf club. *Id.* at 257. In May 2001, however, Dr. Croy determined that further surgery was necessary after x-rays showed a mild subluxation of the prosthesis at the humeral head. *Id.* at 256. In June 2001, Dr. Croy performed a complete arthroplasty. *Id.* at 237-42. In July 2001, Mr. Watson told Dr. Croy he was doing well and had only mild pain. Dr. Croy instructed him to continue exercises to strengthen the musculature of the shoulder. He cleared Mr. Watson to return to his job as a bartender. *Id.* at 255.

At his one-year examination in June 2002, Mr. Watson said he had mild diffuse achiness in the left shoulder, but could use the extremity. He engaged in moderate activities, including fishing. Dr. Croy noted mild atrophy and diminished strength in the left shoulder. Mr. Watson demonstrated full strength and range of motion on the right. X-rays showed the prosthesis was stable. Dr. Croy advised Mr. Watson that a 15-pound limit on lifting with the left arm would extend the life of his prosthetic shoulder joint. *Id.* at 254.

In December 2002, Mr. Watson developed left shoulder pain after a rear-impact motor vehicle accident. He returned to Dr. Croy for evaluation. Dr. Croy diagnosed a shoulder strain and prescribed physical therapy for strengthening the shoulder. *Id.* at 253. Dr. Croy did not see Mr. Watson again for nearly three years. *Id.* at 472. During the interim, Mr. Watson's insured status under the Social Security Act expired on September 30, 2004.

On August 26, 2005, Mr. Watson was involved in a rollover accident in a motor home while vacationing. He reportedly injured his left shoulder in the accident, but was able to continue his vacation and did not require medical attention. *Id.* at 400. He returned to see Dr. Croy on September 19, 2005, after developing shoulder pain. Mr. Watson said the shoulder would pop-out anteriorly with certain movements. He said these symptoms were new following the rollover accident. *Id.* at 472. Dr. Croy proposed exploratory surgery and repair, if needed, for a suspected subscapularis rupture. *Id.* at 474. The surgery did not reveal any instability in the prosthesis or tear of the subscapularis musculature. Dr. Croy prescribed conservative treatment. *Id.* at 457-58.

In December 2005, Dr. Croy completed a Physical Residual Functional Capacity Questionnaire. He indicated Mr. Watson could lift and carry 10 pounds occasionally with the left upper extremity and use his left arm for reaching only 20% of an 8-hour workday. Mr. Watson had

no limitations in the left hand for fine manipulation or fingering and no restrictions on the use of his right hand or arm. Dr. Croy estimated Mr. Watson would be absent from work as a result of his shoulder impairment or treatment about two days per month. *Id.* at 442-43.

The Appeals Council adopted the functional limitations in Dr. Croy's notes from June 2002, restricting Mr. Watson to a lifting limit of 15 pounds occasionally with the left arm to prolong the life of his prosthetic shoulder joint. The Appeals Council gave no weight to the more restrictive limitations in Dr. Croy's 2005 questionnaire because it appeared to reflect limitations caused by injuries suffered in the rollover motor home accident that occurred after the expiration of Mr. Watson's insured status. *Id.* at 542.

The Commissioner can reject a treating physician's opinion that is not contradicted by another treating or examining physician for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Dr. Croy's opinion was not directly contradicted by another treating or examining physician. Accordingly, the Appeals Council was required to provide clear and convincing reasoning in its explanation for discounting his opinion.

The Appeals Council pointed out that Dr. Croy's 2005 questionnaire conflicted with his own earlier opinions from the relevant period of time. For example, in July 2001, Dr. Croy cleared Mr. Watson to return to work as a bartender, advising him only to avoid heavy lifting and heavy pushing to prolong the life of the prosthesis. Admin. R. at 255. In June 2002, Dr. Croy advised Mr. Watson to limit lifting with the left arm to 15 pounds to prolong the life of the prosthesis. *Id.* at 254. This was the last functional assessment Dr. Croy rendered before Mr. Watson's insured status expired and

the Appeals Council adopted it. In contrast, Dr. Croy's 2005 opinion had more restrictive limitations on lifting and added new limitations on reaching and attendance.

The Appeals Council found it significant that Dr. Croy rendered his December 2005 opinion when he "had seen the claimant for the first time in almost 3 years, and after he had reported reinjuring his shoulder in a vehicle accident in August 2005." *Id.* at 542. The plain meaning of this awkwardly worded statement is that the first time Dr. Croy treated Mr. Watson after a three-year break, it was for new injuries suffered in the August 2005 rollover accident and that Dr. Croy's opinion reflected his treatment of these new injuries. This is entirely consistent with the record. Dr. Croy saw Mr. Watson for his last post-arthroplasty check-up in June 2002. *Id.* at 254. He saw Mr. Watson in December 2002, to evaluate a shoulder strain. *Id.* at 253. Then there was a nearly three-year break in treatment until September 19, 2005, when Dr. Croy evaluated Mr. Watson's shoulder for injuries sustained in the rollover motor home accident described previously. *Id.* at 472-75. This evaluation included exploratory surgery and related follow up visits, after which Dr. Croy rendered his opinion in the December 2005 questionnaire. *Id.* at 442-43.

Mr. Watson interprets the Appeals Council's statement differently, in a manner that is not consistent with the evidentiary record, and argues that this shows error. He contends the Appeals Council erroneously found Dr. Croy had not examined him in almost three years at the time he rendered his opinion. This interpretation is improbable because the ALJ's decision, adopted by the Appeals Council, discussed the shoulder surgery Dr. Croy performed in September 2005. *Id.* at 559. The ALJ and the Appeals Council explained that the opinion was too remote from the relevant time, given the intervening accident and reportedly new symptoms, to provide a basis for disability during the relevant period.

6 - OPINION AND ORDER

The Appeals Council found no indication that Dr. Croy's opinion related back to the relevant period before Mr. Watson's insured status expired in September 2004. *Id.* at 542. When Mr. Watson sought treatment from Dr. Croy after the rollover accident, he said he was having pain and subluxation in his shoulder that he did not have before the rollover accident. *Id.* at 472. Dr. Croy then performed exploratory surgery because he could not determine the cause of these symptoms through imaging. He suspected a subscapularis injury, but could not tell if it was an acute tear or a chronic rupture. *Id.* at 473-74. In exploratory surgery, Dr. Croy found no instability in the prosthesis or anterior deficiency or laxity. He did not find fractures or loose bodies. Mr. Watson had intact structures across the anterior shoulder joint so that he did not dislocate anteriorly. *Id.* at 450. The absence of findings supporting a chronic condition and Mr. Watson's report that his limitations were not present before the rollover accident support the Appeals Council's conclusion that Dr. Croy's opinion pertained to Mr. Watson's limitations following the rollover accident but did not pertain to the relevant period for his claim. *Id.* at 542.

Mr. Watson argues that Dr. Croy's finding of a stable shoulder joint is objective evidence that his left shoulder did not change during the interval between the arthroplasty in June 2001 and the exploratory surgery in September 2005. Mr. Watson contends this shows that the rollover accident is not an intervening cause of his shoulder limitations and that Dr. Croy's opinion in December 2005 relates back to the relevant period. This interpretation of the evidence does not account for Mr. Watson's statement that the shoulder pain and subluxation symptoms were not present before the rollover accident. *Id.* at 472. Even if the evidence can rationally be interpreted in the manner Mr. Watson urges, the court must uphold the Commissioner's rational findings of fact if they are supported by substantial evidence. *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995);

7 - OPINION AND ORDER

*Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 599 (9th Cir. 1999). I find the Commissioner's interpretation of the evidence rational and supported by the record as a whole.

The Appeals Council also found no indication that the limitations in Dr. Croy's December 2005 opinion would persist for the 12 months required to meet the statutory definition of disability. 42 U.S.C. § 423. Because Dr. Croy's limitations rationally relate to injuries sustained in the rollover accident and not to chronic conditions, I find no error in this reasoning.

In summary, the Appeals Council provided legally sufficient reasons for discounting the limitations in Dr. Croy's questionnaire from December 2005. The reasons are supported by substantial evidence in the record indicating that Dr. Croy's opinion pertained to injuries from the rollover accident and not to the chronic condition in Mr. Watson's shoulder. Accordingly, the Appeals Council's reasons for discounting Dr. Croy's December 2005 questionnaire as a basis for disability during the period before Mr. Watson's insured status expired in September 2004 are clear and convincing. *Thomas*, 278 F.3d at 956-57.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision.

DATED this   16th   day of September, 2010.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge